Thank you, Your Honors. Dennis Reardon, appearing for Appellant Lazarenko. Your Honor, this case is probably unusually well briefed simply because there's three parties, and the briefing is quite extensive. I intend to be quite brief and reserve what's left of my ten minutes for rebuttal. I'd like to make three points. The first is that while Mr. Lazarenko has a legal interest in this proceeding, he's appealing from a restitution order issued against him in the amount of $19 million, he really doesn't have much of a financial interest in the sense that the government, both in civil and criminal forfeiture proceedings, has frozen all of his assets worldwide. So that the real battle here in terms of who would be affected by the court's order either upholding or setting aside this restitution order is between Mr. Kirichenko and the government, which is why the government is here and in our view quite correctly saying that the order should be set aside. Mr. Kirichenko is really seeking the ability to seek assets from money that's in the government's control rather than Mr. Lazarenko. And why does Mr. Lazarenko have an oar in this water? Well, he certainly – the entry is issued against him. The order is issued against him. He certainly has to represent the – is the proper party to challenge the court's judgment, and he certainly has a strong legal position that he'd like to advance to the court. It's also true that the civil and forfeiture proceeding has not yet been resolved. It's in Washington, so its outcome has not been fixed. So the government, as I say, has frozen all of those assets. Let me move on to the second point, which is simply this. We would all agree that the only reason that the district court could issue a restitution order was that there were criminal convictions, and the criminal convictions were solely for the offenses of money laundering. Mr. Kirichenko would concede that he cannot possibly claim restitution as a victim of money laundering, one, because under this court's authority in Lopez, money laundering is considered a victimless crime, but two, because he was not only a participant but really the chief participant in committing the money laundering in the sense that he was the one who was moving the money around and actually committing the actus reus of involved in the money laundering count. Can't Mr. Kirichenko take the position that when he was extorted by Mr. Lazarenko, part of the performance of the extortion was the delivery of the money, and that included money laundering? Well, no one would have, nor could this record ever support that the movements by Mr. Kirichenko, who was sitting in an $11 million house in Sausalito, were under duress. He clearly was guilty as a participant to the extent that anyone was in this conspiracy. Well, what's odd about this case to me, there are many things that are odd about it, but in this context, one of the oddities is that it appears to me that Mr. Kirichenko at least started out as a victim of fraudulent or coercive activity by Mr. Lazarenko, but he later was a full participant. And we have very few cases that deal with the situation in which a person starts out as a victim and then maybe says, hmm, this looks like a good scheme to me. Maybe I can get in on it, too, and then becomes a co-participant. Absolutely. Yachts in San Francisco and so forth. Let me add one twist to that, Your Honor. The coercion that you speak of, and I'll address that on the merits, clearly only occurred in Ukraine. So let's say there hadn't been money laundering in this case, and Mr. Kirichenko came to this court or the district court and said, hey, I was coerced in Ukraine. Compensate me for my wrongs. The court would say, take it to Ukraine. We have no interest in this. The only reason that there's a jurisdictional power to consider the restitution claim is because the offense of money laundering was committed by Mr. Kirichenko. So we are in the odd position, and no case has ever approached this, where someone is claiming a right to restitution not simply despite the fact that they're a criminal, but because they're a criminal. Well, yeah, I think I agree, but we have to interpret that it's all under the MVRA and the WVPA, right? Well, as well as the jurisdictional statute that we're talking about here. And it's sort of, you know, Congress, as Congress can do sometimes, you know, perhaps there is a way to define Mr. Kirichenko as a victim, but I'm quite sure that they didn't plan to have Mr. Kirichenko be making claims under this. And so I'm wondering just sort of intellectually, you know, how you, you know, how you look at this, because it's a little, it's a little, it would be like if it was, I love the Sopranos, and if it was like Tony Soprano was claiming against Pauly Walnut that money that they all were, you know, they were all going to pay the big back as part of restitution or something along those lines. So it clearly can't be. I need to watch this show to understand the question. But it clearly, you know, so how do we unwind this in terms of to say is it reaching an absurd result under the? Well, I would emphasize this unique jurisdiction issue. To take it a little further, Tony and Joey Walnuts are in Italy, and he's claiming, Joey's being claimed he's been ripped off in a drug deal, and he claims jurisdiction here, he says, because I imported the drugs into the United States. The only way that Mr. Kirichenko can say that this has a U.S. connection is because money laundering was committed, and he clearly is the central figure in the money laundering in terms of he's moving all of the money around. Before you run out of time, what was your third point? You had three points. Here's the third point, Your Honor. The purpose of the restitution law is this. Let's give a good example. Somebody's got a business they're running. They're grossing $10,000 a month, and along comes a street gang and says you've got to pay $2,000 in protection every month. A cop comes along and says I'll shut you down, or an agency does, for health violations unless you pay me money. Clearly, their situation is being worsened by that crime. They're entitled to get that $2,000 back from the perpetrator of the crime. Let's imagine a situation where a government official says to his nephew, look, here's the story. There's an opening for a chemical engineer in the water department. It's a no-show job. It pays $100,000 a year. I'll get you the job. It's no show. Don't worry about it. You get 50 grand for doing nothing. So at the end, the scheme is exposed, the official is convicted, and the nephew comes in and says I want $50,000 more a year. I only got 50. Well, why is that? Well, because I gave the other half to my uncle. How much would you have made if this crime was not committed? Nada. I couldn't be hired as a chemical engineer. This is a situation in which Mr. Kirichenko, let's look at this. He went to Mr. Lazarenko in Ukraine and said I want in on this business. What we do is assume that didn't happen. Okay. He didn't go there. How much money does the record reflect that he would have made had he never contacted Mr. Lazarenko? The record is very clear here that we may not agree with it. This is the way things are done in Ukraine at that time certainly and today. He would not have had any business. He would not have any business. There's no indication if he hadn't gone to Mr. Lazarenko he would have made any money. And he is before us saying, you know, if only I hadn't gone to Mr. Lazarenko or he hadn't entered into this relationship, I could have bought two $11 million houses in Sausalito instead of the one I got. Frankly, you would have to believe in the Easter Bunny on this record to believe that Mr. Kirichenko would have made, instead of the $30 million he got, almost all of which the government let him keep, that he would have made $60 million. It's conduct which occurred in a foreign country. It's only before the Court because Mr. Kirichenko participated actively in a money laundering scheme, and under that it would certainly be an offense to the policy of restitution and the statutory scheme if Mr. Kirichenko were effectively to ding the government for $19 million more as restitution. Thank you, Your Honor. I see I have a few seconds left. May it please the Court. Good morning. My name is Peter Axelrod. I represent the United States. The United States agrees with Lazarenko that this Court should vacate the District Court's award of restitution. Right now you agree, but before you didn't have much to say, right? Well, Your Honor, it's true that below we did not take a position, we did not endorse the claim, but we did not object to it either. And it's for that reason that plain error is the appropriate analysis here, because the parties and the Court missed a critical issue, which is the operation of the Crime Victims' Rights Act, the CVRA, in this case. I have a question about that. Ordinarily, an issue that is not raised in the District Court cannot be considered by us on appeal, and the parties did not raise that issue, either one of them. So how can we reach it, even assuming that you are correct? I read their arguments as being under the other two statutes that Judge Callahan mentioned earlier. Well, right, Your Honor, except that what the record reflects is that when Mr. Kirichenko made his claim, he cited to the CVRA. He cited the authority of the CVRA, and then he went to the substantive statutes, and what the record reflects is that that's where the rubber met the road and there was a discussion back and forth about that issue. The question is — There was a discussion, but I guess the issues that are raised by the other parties do not include that issue. As a means for undoing — I'm not being very articulate about this. Usually the appellant specifies the issues that are to be decided on appeal. This one is not specified by the appellant, but only by the government in response. Is that okay? Well, I think, yes, for this reason. It's the court's error. In other words, the court has an obligation to determine in an instance where an individual seeking restitution is not supported by the government whether that individual can seek restitution, and the court has an obligation to evaluate under the CVRA whether that person can proceed or not, whether they qualify as a victim. That is the exclusive portal, if you will, to get to the substantive restitution statutes. Well, I'm kind of — I'm bothered by your posture in the sense that in the lower — in the district court that I don't know why you still maybe had a need for Mr. Karachenko. You don't get in his way to go and get his money, but then it comes up here and you think, oh, my goodness, this is opening a can of worms with regard to victim restitution. And Congress is — just had never intended this. So it — your — you know, your principled positions are a moving target here, and that bothers me. Well, I appreciate what the Court's saying, and I appreciate that this is obviously an unusual way for this — for this issue to arise. But nonetheless, because it's a question of the Court's review of the statute in the first instance, I think it's — It's not — it's not a jurisdictional question. So we have no obligation to consider it as a non-jurisdictional question, correct? Correct. Okay. So the appellant has declined to raise this as an issue on appeal. Also correct? Or has not? I don't know if it actively declined, but this is not their issue. I would actually disagree in this regard. One of the arguments that Lazarenko made below is Mr. Kirchenko is not a victim. That issue was made in a more limited context. Mr. Kirchenko is what? Not a victim under the substantive restitution statutes. That was — that's part of the record. Well, if he's right, isn't that a complete answer? No, because that presupposes that he has a right to seek restitution in the first instance, and that's what's governed by the CVRA. The government's position is he doesn't even get there because he doesn't satisfy the statutory — Well, I understand — I understand your position, but it's a complete answer in the sense that it resolves the litigation, right? It leaves for another day. Assuming, without deciding, that he could otherwise be a victim, he isn't under these statutes. Wouldn't that be a complete answer to the litigation? Yes. Okay. So tell me again why you're entitled to inject a new legal issue into the case that the appellant has not brought to us, when the usual rule is that except to try to uphold the decision below, the appellee normally does not get to add issues to the case. And you are an appellee who is adding ways of undoing the district court's decision rather than upholding it. It's not an alternative basis for affirmance, which is an obvious permission. But it's an alternative basis for reversal, and normally the appellant defines the issues on appeal. Right. I guess the way I would – in my mind, the issue is, was there an issue that was not addressed below in the context of a forfeiture of a right? In other words, as opposed to a waiver. And this issue was forfeited. There was an error. It was plain. And that's the analysis that the Court should go through. The record does reflect that this statute, the CVRA, was cited. It's also correct that that issue was never addressed. It's – So what you're saying, you shouldn't have let him come in there and ask for money, right? Because the government doesn't want people coming in and telling the government how to handle restitution, right? No. It's a little bit different than that, Your Honor. Because I had another case where the government – there was a victim of a crime that didn't like what the government was doing to collect money under one of these statutes, and the government took the position that victims have nothing to say about it, that the government decides how to collect it. And that would be wrong in the following regard. The – in 2004, Congress enacted the CVRA. That changes the landscape, because prior to that time, individuals who were not The CVRA says, okay, if you satisfy the definition of a crime victim, you have a number of rights. You have the right to be heard at sentencing. You have the right to seek restitution as provided at law. And it also has certain prohibitions. If you're accused of a crime, you can't benefit from any of the CVRA rights. The issue in this case is that the – there was never – Mr. Kirchenko doesn't satisfy that definition. So if he satisfied the definition of a crime victim under the CVRA, then he would have a right to proceed through to assertion of a right under the substantive restitution statutes, the MVRA and the VWPA that you referred to earlier. So in that regard, the – it's not for the government to say that an individual can't proceed if they qualify under the CVRA. The – I think that the starting point for this is individuals do not have an independently enforceable right to restitution. And that's under this Court's case in Cloud and Edwards. So it's all a function of statute. And in this case, because the CVRA is the portal, and because Mr. Kirchenko did not the Court committed error. And that error was plain in this regard if you look at the CVRA. Well, where was that argument from the government and the district court? It was not made. I'm not – What brought about your enlightenment? Well, I think that the enlightenment is a function of recognizing that there was a mistake made and that there was an error and that it was plain. And that's why we've taken the position that we're taking. When you say a mistake, you're saying the Court made a mistake. But are you saying the government made a mistake by not? Absolutely. Absolutely. I mean, there's – this is a situation where the government missed something and the Court missed it, too, and the parties missed it, too. It would have been much better for everybody had it been caught and addressed at the time, but it wasn't. But there's a procedure and a law – there's precedent to deal with circumstances where the law is missed or misapprehended, and that's the basis of our argument. The – You have – go ahead. You have a few more seconds. Oh, okay. The – just to sort of wrap up the plain-error argument, obviously, this affected Mr. Lazarenko's substantial rights because it resulted in a judgment of $19 million in restitution. And I think the fundamental and final point is that there is a concern about having restitution awarded to co-conspirators in criminal conduct. Thank you. Thank you. And last but not least, we'll hear from the intervener. Good morning, Your Honors. George Niaspolo on behalf of Mr. Kirichenko. I – of course, it's obvious that the Court has questions, and hopefully I will address them, and I'm prepared to address the questions that the Court gives to me. But I would just like to start by saying that when one sorts kind of through the issues in this particular case and kind of drills down, as has been indicated, the overarching issue that predominates or umbrellas most all of the issues is whether or not Mr. Kirichenko, who we have submitted as clearly a victim under the statutes, should be denied restitution because he was found to be a participant in the defendant's conspiracy to commit money laundering. I – But he was, in fact, as the facts are now established for purposes of our decision, he was a co-conspirator in the scheme to launder money. That's correct. Okay. So why doesn't – why isn't the correct rule under all of the statutes, the ones that Mr. Lazarenko has cited, the one that the government has cited, why isn't the right answer that a criminal co-conspirator, even if they started out earlier as a victim who intentionally and willingly participates in a criminal enterprise, why don't they lose their status of victim for purposes of the various restitution statutes? And the reason that a hard rule like that, that is that per se co-conspirators would be denied the opportunity to request restitution is, one, we believe, or as we've explained, it runs – it can run and, in fact, it does run contrary to the language and overall intent of the statutes, that is to ensure that victims are made whole. Two, it's an unnecessary limitation for the court to impose in these types of cases, which would result in a limitation of the authority of lower courts to take the more reasoned approach of actually applying the requirements of the statute, and you would end up in the same place. All of the statutes have as a common theme that the – a victim is somebody who is harmed by the criminal activity. I'm paraphrasing, and yes, they have some slight differences, but that seems to me to be the common theme. And in a sense, one is always harmed by one's own criminal activity, but one doesn't get restitution from oneself. And why isn't this really that situation to say, well, you know, this person and I as well as I would have liked, and so I now get money from my co-conspirator? Why does that make any sense in light of Congress's intent? If that were the facts and circumstances of this case, it wouldn't make sense, or it may not make sense. And what I'm saying is under those facts and circumstances, the two people schemed together to make the money off the backs of other people, somebody in applying the hard rule that says if you were a co-conspirator or participant in criminal conduct, you cannot get restitution, period. Well, we have cases that have exceptions to that, but they are usually the ones, for example, if someone agrees to be smuggled into the United States, but then they're enslaved and beaten and they didn't agree to that. But in those cases, the criminal activity predated the victimhood. In other words, oh, yes, I agreed to be alien smuggled, but, gee, that didn't mean I agreed to be beaten up when I got here. Here it turned the other way. The alleged victimization or the actual victimization, let's call it, happened before the criminal activity, not the other way around. So it was kind of despite having been victimized, now you become a co-conspirator and proceed onward. But what you don't become a co-conspirator in, and it clearly is the victimization which continues. In the Sanga case, which is what the court was referring to, there was a temporal line, that is, a timeline, as you've referred to, between her participation was she was clearly a co-conspirator in the offense of conviction. She was not a participant in the conduct of which she was victimized that followed in this particular situation in our case. The line that you have is Mr. Karachenko was not a participant in any way in being extorted, in the extortion. But my difficulty with it, aside from the jurisdictional questions that have been raised about it, my difficulty with it is that they're all financial crimes and that the victimization occurred before the later decision to become a criminal in the crime of conviction. Your Honor, I don't think that the victimization just happened before the foundational core of the relationship that was established in 1992 and that stayed with the Mr. Karachenko in the first instance had to meet with Mr. Lazarenko. And that is Lazarenko, as a result of his position, caused him harm before anything happened. Mr. Karachenko had a business that was operating, and when he tried, through his managers in his business, to obtain wheat from a state-owned facility to sell to them, they were told, you will not be able to buy wheat from us unless he says it's okay. Period. That, combined with the fact that he had had discussions with other businessmen who said... And how is that the result of the later criminal conspiracy? And what I'm saying to the Court is, that doesn't go away as he continues to be one governor of the province that controls, he controls, as the government describes, he has his hand on all the levers of the government operation within the region. When he becomes vice prime minister, that power expands. When he becomes prime minister, he now has control over anything. So his ability to stop Mr. Karachenko from doing business, from interfering with his access, as a normal person who would be operating if it had been a privatized capital situation... Let me interrupt you just for a second. Yes, Your Honor. Because I understand the way that Karachenko paid Lazarenko off was to give one half of his business to Lazarenko's aunt. He could make payments to the aunt. He didn't have to also involve himself in money laundering, did he? No, Your Honor. What happened was... Was it integral to the extortion plot that he should deliver money to Lazarenko through money laundering? Is that your point? No, because the money laundering, the laundering of the proceeds of his and others happened after. That's exactly my problem with your position, because under all of these statutes, victims are people who are harmed from the conduct. So the harm comes after the crime of conviction, not the other way around. Here you have the harm from a previous crime that happens to suck him into the criminal enterprise here. You know, Your Honor, I don't know that I agree with the proposition that the harm always follows. In response just specifically to Judge Bea's question, I was suggesting that with regard to a payment that was made, the money is then laundered. But the harm continues throughout. And the separation is that he has continued to be extorted. His participation in laundering the funds is separate and distinct from that. His fear that was found by the jury. Well, if his participation in the money laundering is separate and distinct, which are the words that you just used. That's right. Then how is he harmed by the money laundering solely? Because that's the question. In order to be a victim, he has to be harmed directly and approximately by the other crime. That's correct, Your Honor. But where, and by separately and distinctly, I'm talking about, we were talking about temporal lines before, as you were in the Sanga case. I'm talking about separate and distinct from his conduct in participating to assist in the movement of money. Your Honor, how he recovers clearly is the specific language of the statute that we're dealing with, which is that in the case of an offense that involves as an pattern, any person directly harmed by the defendant's conduct, including any person directly harmed by the defendant's criminal conduct in the course of the scheme, conspiracy, or criminal activity, is entitled to recover. I think we understand your position, and your time has expired. Thank you, Your Honor. Thank you. I think, Mr. Reardon, you might have a few seconds left. About 35 seconds, Your Honor. The sine qua non of Mr. Niespolow's position is ignore crime A because my client is entitled and would be entitled if he hadn't committed crime A to restitution because of crime B. But in this case, if crime A, money laundering, hadn't been committed, he wouldn't be entitled to any restitution because there would be no jurisdictional link. Are you still contending mootness? Hmm? Are you still contending mootness? I don't understand that question. Weren't you contending that this appeal was moot at some point? No. No, Your Honor. No. Okay. Your time has expired also. Okay. Thank you, Counsel. Thank you, Your Honor. We appreciate the arguments of all counsel. This case is submitted.
judges: Graber, Callahan, Bea